Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3231 | **DATE** | 7/28/2004 |
| **CASE TITLE** | Comcast IL vs. Hightech Elec | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 11/09/04 at 9:00 a.m. For the reasons stated in the attached memorandum opinion, defendants' motion to dismiss plaintiff's second amended complaint is granted in part and denied in part. All discovery is to be noticed in time to be completed by 10/28/04. Dispositive motions with supporting memoranda are to be filed by 11/29/04. Responses to the dispositive motions, if any, are to be filed by 12/13/04 and replies, if any, are to be filed by 12/20/04. Enter Memorandum Opinion.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 29 2004 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MW | courtroom deputy's initials | 2004 JUL 29 AM 8:04 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMCAST OF ILLINOIS X, LLC., )
an Illinois Limited Liability Company, )
)
Plaintiff, )
)
v. ) No. 03 C 3231
)
HIGHTECH ELECTRONICS, INC., )
etc., et al, )
)
Defendants. )

**DOCKETED**

JUL 2 9 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Hightech Electronics, Inc., a/k/a Hitech Electronics, Inc.'s, ("Hightech"), Internet Traffic Pros, Inc.'s, ("Traffic Pros"), Carlos Garcia's, ("Garcia") and Net Results, Inc.'s ("Net Results") motion to dismiss Plaintiff Comcast of Illinois X, LLC's ("Comcast") second amended complaint. For the reasons stated below, we grant the motion in part and deny the motion in part.

## BACKGROUND

In February of 2002, Garcia worked for a company he created and operates

1

named Hightech, which set up a website named 1-satellite-dish.com. According to Comcast, 1-satellite-dish.com contains links to over thirty other websites which are selling illegal cable pirating devices. Comcast alleges that, by setting up 1-satellite-dish.com, Garcia and Hightech assisted in the distribution of cable pirating devices by driving internet traffic to these other websites that sell cable pirating devices. Comcast alleges that in return for such services, those websites selling cable pirating devices that are linked to 1-satellite-dish.com provide Garcia with substantial compensation.

Defendant Net Results is the named domain server for the 1-satellite-dish.com website, as well as for the other websites selling cable pirating devices that are linked to 1-satellite-dish.com. According to Comcast, Net Results has knowledge of the illegal activity occurring on these websites because it was subpoenaed in two other lawsuits regarding such illegal activities. Net Results continues to provide internet service to 1-satellite-dish.com, as well as to the other websites linked to that page which are selling cable pirating devices.

Garcia is also allegedly the president of a company named Traffic Pros. Comcast alleges that Garcia, acting on behalf of Traffic Pros, assisted other companies in distributing cable pirating devices by selling customer sales leads to these companies. Comcast further alleges that Garcia, through Traffic Pros, also provided such companies with organizational charts teaching them how to run an illegal pirating device business. Comcast also contends that Traffic Pros operates a

website named direct-hosts.com, that purportedly provides web hosting to cable-descramblers-direct.com and to numerous other illegal pirating device websites.

Comcast further alleges that numerous other cable companies have previously sued Garcia for his operation of two companies, not named in the present suit, that sold illegal cable pirating devices. In January of 2002, as a result of one of these suits, Garcia allegedly signed a Consent Judgment enjoining him from assisting others in any way in distributing any illegal cable equipment.

According to Comcast, Defendants' activities described above have financially injured Comcast, have created an adverse impact on Comcast's ability to maintain a high quality of programming services for its subscribers, and have increased the risk of signal leakage which could potentially violate FCC regulations. Comcast also alleges that the state of Illinois could suffer from decreased franchise fees Comcast pays to the state.

On May 14, 2003, Comcast initiated this lawsuit. Comcast filed its final six count complaint, the second amended complaint, on October 14, 2003, against Hightech, Traffic Pros, Garcia, Net Results, and William S. Reed (not joining in Defendants' motion to dismiss). Comcast brought this complaint against Defendants pursuant to the Cable Communications Act, 47 U.S.C. § 553 *et seq.* (Count I), the Illinois Cable Piracy Act ("ICPA"), 720 ILCS 5/16-21 (Count II), and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2) and (b)(1) (Counts III and IV). Comcast also brought a state unjust enrichment claim (Count V) and a

state constructive trust claim (Count VI). All Defendants other than Net Results filed a motion to dismiss. Net Results subsequently filed its own motion to dismiss and adopted the arguments of the other defendants.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Under the principle of notice pleading, espoused by the Federal Rules of Civil Procedure, a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint should not be dismissed as long as plaintiff's allegations put the defendant on fair notice as to the nature and grounds of the claim. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Plaintiffs can plead conclusions. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). A claim should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Additionally, "*pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers." *McCormick*, 230 F.3d at 325.

# DISCUSSION

### I. Consent Judgment

Comcast claims that its predecessor AT&T entered into a consent judgment agreement with Garcia on January 8, 2002, in a previous, unrelated case. Comcast argues in its answer to the instant motion that Garcia is prohibited under the consent judgment from engaging in the conduct alleged in the complaint. However, Defendants correctly point out that a violation of the consent judgment does not prove a violation of 47 U.S.C. § 553(a). Also, the consent judgment concerned all claims against Garcia relating to "Decoder Devices" and the consent judgment did not even cover all claims regarding decoder devices. Rather, the judgment specifically concerns operations through Galaxy Electronics, Inc. and Viper Electronics, Inc., which are wholly unrelated to this case. Also, Comcast raises this argument in passing in their memorandum in opposition to the instant motion and Comcast does not seek to enforce the consent judgment in the complaint. It is not clear that we would be the proper tribunal for such a remedy in any case.

### II. Cable Communications Act Claim

Count I of Comcast's complaint alleges that Defendants violated 47 U.S.C. § 553(a)(1) under the Cable Communications Act. Pursuant to 47 U.S.C. § 553, "no

person shall intercept or receive or *assist in intercepting or receiving* any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1)(emphasis added). Defendants argue that creating and maintaining websites that have hyper-links to other websites which sell illegal cable descramblers does not fall within the meaning of "assist in intercepting or receiving" in 47 U.S.C. § 553(a)(1). Furthermore, Defendants argue that Comcast has not provided sufficient facts to show intent which is required for a 47 U.S.C. § 553(a)(1) claim.

### A. Scope of "Assist in Intercepting or Receiving"

The phrase "assist in intercepting or receiving" is defined in 47 U.S.C. § 553(a)(2) as "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1)." 47 U.S.C. § 553(a)(2). Thus, 47 U.S.C. § 553(a)(2) indicates that in order to "assist in intercepting or receiving" the defendant must have manufactured or distributed a device and intended that the device would be used for the unauthorized reception of cable services.

In the instant case, many of the allegations against the Defendants involve merely maintaining a website that contained hyper-links to illegal pirating websites.

(SA Compl. 28). Such conduct does not constitute manufacturing the pirating devices. Neither does it constitute the distribution of the pirating devices. Defendants did not sell the pirating devices through the hyper-links. The hyper-links merely provided an avenue for webusers to proceed to webpages that sold the pirating devices. There is no indication that webusers could not access the pirating webpages without the hyper-links. The links on Defendants' websites merely provided a separate avenue to the pirating websites. Comcast argues that Defendants increased the internet traffic to the websites that sold the illegal pirating equipment. However, Comcast does not allege that the website at issue in this case did not have links to lawful websites. Defendants correctly point out that under Comcast's theory of increased internet traffic all major search engines such as Yahoo and Google could be named as defendants as well. Such a broad interpretation of the assist provision in the Cable Communications Act is clearly unwarranted, particularly since there is a specific limiting definition provided in the Act. Under the plain language of the statute a dismissal is warranted against all Defendants to the extent that Comcast's claims are based upon each Defendant's maintenance of a website with hyper-links to illegal pirating websites.

Comcast also alleges that Net Results is the domain server of Hightech's website and of other websites actually selling illegal cable equipment. (SA Comp. 29). For the reasons stated above in regards to hyper-links, no claim against Net Results can be based on Net Results' involvement with Hightech's website. In the

second amended complaint Comcast also makes general allegations that Net Results provides services to "over thirty (30) other websites which are linked to [Hightech's website] which are selling illegal cable descramblers." (SA Compl. 29). However, this vague reference to "services" provided to "other websites" is insufficient to even meet the notice pleading standard.

Unlike the other Defendants, Garcia, allegedly through Traffic Pros, did have a more direct relationship to companies that distribute illegal cable equipment by allegedly selling companies sales leads to potential buyers of such illicit equipment. (SA Compl. 30). Comcast further alleged that Garcia, through Traffic Pros, also provided these companies with organizational charts and taught them how to run a pirate descrambler business. (SA Compl. 30). Garcia assisted the pirating companies in their initial stages and Garcia profited off of the pirating companies' increase of their customer base. However, such activity does not constitute the "manufacture or distribution" of illegal pirating equipment. 47 U.S.C. § 553(a)(2). *See also CSC Holdings, Inc. v. Greenleaf Electronics, Inc*,2000 WL 715601, at *5 (N.D. Ill. 2000)(indicating that the legislative history for § 553(a)(2) "was 'primarily aimed at preventing the manufacture and distribution of so-called black boxes and other unauthorized converters. . . ."). Therefore we grant Garcia's and Traffic Pros' motion to dismiss the Cable Communications Act claims brought against them.

B. Intent

Defendants also contend that Comcast has not alleged facts sufficient to show intent as required by 47 U.S.C. § 553(a)(1). In reviewing a complaint on a motion to dismiss, the plaintiff's allegations of intent are sufficient if they would satisfy Rule 8's notice pleading minimum requirement and Rule 9(b)'s requirement that the plaintiff plead motive and intent generally. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Comcast alleges that Garcia, Hightech, and Traffic Pros, through their operation by Garcia, and Net Results have been implicated in prior suits involving illegal cable pirating devices. Comcast further contends that Defendants are all aware of the illegal activities taking place within the companies which they are assisting. Comcast thus claims that such facts in its complaint indicate Defendants had intent to assist in the distribution of illegal pirating devices. We agree that intent is sufficiently pled under the notice pleading standard.

### III. Illinois Cable Piracy Act Claim

Defendants move to dismiss Count II of Comcast's complaint, which alleges that Defendants violated the ICPA. Pursuant to 720 ILCS 5/16-21(a) "any person aggrieved by a violation of Section 16-19 may bring a civil action in any court of competent jurisdiction." Furthermore, 720 ILCS 5/16-19 provides that, "a person commits an offense if he or she knowingly obtains or uses a communication service without the authorization of, or compensation paid to, the communication service provider, or assists or instructs any other person in doing so with intent to defraud

9

the communication service provider." On its face, Comcast's complaint establishes facts that could prove a violation of the ICPA, namely that Defendants assisted others in using illicit communication services. The ICPA does not define the term "assist," as does the Cable Communications Act. Thus, Defendants' actions as the domain server for websites selling pirating cable devices, maintaining web links to such sites, or selling sales leads to companies selling such illicit equipment, could possibly violate the ICPA.

Defendants further argue that 720 ILCS 5/16-19 was not enacted until January 1, 2003, and all of Comcast's exhibits display conduct taking place prior to 2003. Thus, Defendants contend that Comcast does not have a cause of action under the ICPA. We agree that Defendants should not have to defend themselves for actions taken place before the enactment of 720 ILCS 5/16-19. In Comcast's reply, Comcast states that Defendants' conduct continued at least until the time the suit was filed in May of 2003, after the enactment of the statute. *See McCormick*, 230 F.3d at 324 (stating that a plaintiff can plead conclusions). Therefore, Comcast does not need to provide detailed evidence of Defendants' activities from January 1, 2003 until May 14, 2003, and Comcast has sufficiently stated a cause of action for a violation of this statute during that period.

Defendants also argue that Comcast cannot sue under 720 ILCS 5/16-21 because the cause of action is created under 720 ILCS 5/16-19. Defendants' contention here is wholly incorrect. Comcast adequately pleads Defendants violated

10

720 ILCS 5/16-21, as it brings the action pursuant to the section that provides for the private cause of action for a violation of 720 ILCS 5/16-19, the section that Defendants have allegedly violated. Therefore, we grant Defendants' motion to dismiss the ICPA claim (Count II) to the extent that it is based upon wrongful conduct that occurred prior to January 1, 2003. We deny Defendants' motion to dismiss the ICPA Count to the extent that it is based upon wrongful conduct that occurred on or after January 1, 2003.

IV. Digital Millennium Copyright Act Claim

Comcast further alleges that Defendants violated the DMCA. The DMCA provides:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title. . .
> (b) Additional violations.--(1) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--

11

> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;
>
> (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

17 U.S.C.A. § 1201(a)(2);(b)(1). Defendants argue that only copyright holders can bring suit under the statute, and Comcast, in regards to the cable signals at issue, is not a copyright owner. Defendants further contend that Comcast does not state facts in its complaint that could support a violation of the statute.

Comcast cited in support of its DMCA claim *Realnetworks, Inc. v. Streambox, Inc.*, in which the Washington District Court noted that 17 U.S.C. § 1201 is distinct from copyright infringement. 2000 WL 127311, at *6 (W.D. Wash. 2000). However, *Realnetworks, Inc.* is not controlling precedent and is distinguishable from the case at hand because unlike the instant case a copyright holder brought suit in *Realnetworks, Inc. Id.* Furthermore, the Court in *Realnetworks, Inc.* was not determining whether 17 U.S.C. § 1201 applied to non-copyright holders, but rather whether it applied to copyright infringement claims. *Id.*

Comcast also cites *CSC Holdings, Inc. v. Greenleaf Electronics, Inc.*, 2000 WL 715601, at *6 (N.D. Ill. 2000) in support of its position. In *Greenleaf*

*Electronics, Inc.*, the plaintiff was a cable provider bringing suit against defendants under the DMCA for selling and distributing pirate cable descrambling equipment. *Id.* The Court held that the plaintiff cable provider was authorized to bring suit under 17 U.S.C. § 1203(a), as it was a person injured by a violation of the DMCA. *Id.* Therefore, it is appropriate for Comcast to bring the current DMCA claim.

Regarding the sufficiency of Comcast's claim in 17 U.S.C. § 1201(a)(2), the DMCA explicitly states that a violation of the statute occurs when descrambling equipment circumvents a measure that "effectively controls access" to a protected work. Measures based on encryption or scrambling effectively control access to copyrighted works. *Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294, 318 (S.D.N.Y. 2000). Comcast is undisputedly not the copyright holder of the programs on the networks which it provides to its subscribers. However, those programs are copyrighted material, and Comcast controls access to such protected material through the descrambling method described in its complaint. Similarly, under 17 U.S.C. § 1201(b)(1), although the "controlled access" language of 17 U.S.C. § 1201(a)(2) is not stated, a violation of the statute also occurs when a technological measure that effectively protects the right of a copyright owner is circumvented. Comcast does control the technological measure that protects the copyrighted material. Moreover, pursuant to 17 U.S.C. § 1203(a) "any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." The civil remedies

provided in the statute do not explicitly state that recovery is limited to the copyright holder. Therefore, as Comcast controls access to copyrighted material and is a person injured from a violation of 17 U.S.C. § 1201, we conclude that it can bring suit pursuant to the DMCA.

Furthermore, in regards to the allegations that Defendants maintained a website with hyper-links to websites that sold illegal pirating devices, Comcast has alleged facts sufficient to state a claim under 17 U.S.C. § 1203(a). Courts have held defendants in violation of the DMCA for maintaining links to other websites that contain access to or information regarding circumvention technology. *See Reimerdes*, 111 F.Supp. 2d at 345 (enjoining defendants from linking to other websites that made unauthorized DeCSS software available pursuant to the DMCA); Universal City Studios, Inc. v. Corley 273 F.3d 429, 447 (2d Cir. 2001)(holding defendants were in violation of the DMCA for linking to websites containing access to copyrighted movies on DVDs). In *Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*, the Court held that the website operator that posted links to infringing websites did not contribute to such infringement. 75 F. Supp. 2d 1290, 1293 (D. Utah 1999). However, the rationale for this finding was that there was no direct relationship between the defendant and the people who operated the websites containing the infringing material. *Id.* Specifically, the defendants were not receiving any kind of compensation from the linked websites. *Id.*

Such evidence is clearly contrary to the case at hand, as Comcast alleges that

Garcia and Hightech receive compensation from the website operators that link to 1-satellite-dish.com. Furthermore, Net Results, as the domain server of websites selling illegal cable equipment, and Garcia, through Traffic Pros, selling other companies sales leads for potential purchasers of illegal cable equipment and teaching those companies how to set up such a business, could possibly be engaging in trafficking under the DMCA because they are allegedly assisting sellers of illegal cable equipment in distributing such equipment. Therefore, Comcast sufficiently stated a claim against Defendants under the DMCA in trafficking or acting in concert with a person who has manufactured or distributed illicit circumvention equipment, and we deny Defendants' motion to dismiss Counts III and IV.

IV. Unjust Enrichment

Defendants further contest Comcast's unjust enrichment claim. Unjust enrichment is a quasi-contractual theory available when one party has benefitted from the services of another, and according to the principle of equity, it would be unfair to allow that party to retain such a benefit. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

Defendants cite two cases to support their theory that the court should dismiss Comcast's unjust enrichment claim. Citing *Premier Electrical Construction Co. v. LaSalle National Bank*, Defendants contend that Comcast has not alleged that the fees Defendants received for assisting in the sale of pirate cable devices should have

instead been paid to or belong to Comcast. 477 N.E.2d 1249, 1257 (Ill. App. Ct. 1984). In *Premier Electrical Construction Co.*, the Court held that to prove unjust enrichment a defendant must have accepted a benefit which would be inequitable for him to retain because payment was not made for the service. *Id.* Defendants also cite *National American Insurance Co. v. Indiana Lumbermens Mutual Insurance Co.* to support this contention, in which the Court held that unjust enrichment occurs when a third party transfers a benefit to the defendant which belongs to the plaintiff. 2000 WL 975176, at *2 (7thCir. 2000).

However, the holdings in *Premier Electrical Construction Co.* and *National American Insurance Co.* do not support Defendants' motion to dismiss. Comcast did allege in its second amended complaint that revenue gained from assisting in the distribution of pirate cable devices that illegally benefit from Comcast's services are property rights which belong to Comcast. Furthermore, Comcast alleges that Defendants received revenue from assisting others in selling illegal pirating devices, and those are benefits received that would be unfair to retain. The revenue Defendants Garcia, Hightech, and Traffic Pros allegedly received from the third party companies selling illegal cable equipment, is sufficient to state a claim for unjust enrichment because that monetary benefit belongs to Comcast, in the form of legal cable service. Although Defendants are not alleged to have directly assisted cable consumers in unlawfully obtaining Comcast's broadcasts, the money paid by consumers is indirectly routed to Defendants. The doctrine of unjust enrichment is

an equitable doctrine. It does not call for decisions based on rigid technical distinctions. Rather, as an equitable doctrine, it is based upon notions of fairness and justice. It is alleged that consumers purchased illegal cable devices from pirating companies and the companies then used the consumers' funds to pay Defendants for the inclusion of the hyper-links on Defendants' websites. Defendants' alleged participation is sufficient to state a claim for unjust enrichment.

Comcast has not contended that Net Results benefitted as the domain server for websites that sell illicit cable equipment. However, in ruling on a motion to dismiss, we grant the plaintiff the benefit of all reasonable inferences that may be drawn from the allegations within the complaint. *Palay v. U.S.*, 349 F.3d 418, 425 (7th Cir. 2003). We find it a reasonable inference that Net Results has retained a monetary benefit as the domain server for websites that sell cable pirating devices. Therefore, Comcast has met the minimum pleading requirements against the Defendants and we deny the Defendants' motion to dismiss Count V.

### V. Imposition of a Constructive Trust

Comcast seeks an imposition of a constructive trust against Defendants. Defendants move to dismiss this count contending that a constructive trust is not a cause of action, but rather a remedy. The imposition of a constructive trust is commonly used as relief for an unjust enrichment. *May Dept. Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 603 (7th Cir. 2002). Thus, a constructive trust is not a separate

cause of action but rather an equitable remedy. *ZCM Asset Holding Co. v. Allamain*, 2003 WL 732753, at *4 (N.D. Ill. 2003). Accordingly, an imposition of a constructive trust cannot stand as a separate claim. *Id.*

Although a constructive trust claim is superfluous, a plaintiff still has the option to prove that a constructive trust is an appropriate equitable remedy if it prevails on other claims. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998). To prove such a remedy, a plaintiff must establish grounds for imposing a constructive trust that are so clear and convincing that it leads to only one conclusion. *Davis v. Combes*, 294 F.3d 931, 936 (7th Cir. 2002). Thus, although the burden is heavy, Comcast could still attempt to prove a constructive trust as an appropriate remedy, but cannot state it as a separate claim.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss the Cable Communications Act claim (Count I). We grant Defendants' motion to dismiss the ICPA claim (Count II) to the extent that it is based upon wrongful conduct that occurred prior to January 1, 2003. We deny Defendants' motion to dismiss the ICPA claim (Count II). We deny Defendants' motion to dismiss the DMCA claims (Counts III and IV). We deny Defendants' motion to dismiss the

unjust enrichment claim (Count V). Comcast's request for a constructive trust is properly deemed a request for relief and not a separate claim in this action.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 28, 2004